UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JAMES THOMAS HOOVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 15-2098-JDT-cgc |
| ) | |
| TIPTON COUNTY JUSTICE SYSTEM, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

ORDER DISMISSING COMPLAINT,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On February 11, 2015, Plaintiff James Thomas Hoover, inmate number 1470, who is incarcerated at the Tipton County Correctional Facility ("Jail") in Covington, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2). After Hoover submitted the required documentation (ECF No. 5), the Court issued an order on February 24, 2015, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b) (ECF No. 6). The Clerk shall record the Defendants as the Tipton County Justice System; the Office of the District Attorney of Tipton County; the Tennessee Highway Patrol ("THP"), which was

sued as the "State Trooper Office in Covington, Tennessee;" Trooper Donald Tabb; and Tipton County.[1]

## I. The Complaint

The allegations of Plaintiff's complaint are difficult to decipher, both because of Plaintiff's handwriting[2] and his failure to use complete sentences. Plaintiff alleges that the District Attorney's Office has delayed his preliminary hearing and that he was not arraigned for six months. Plaintiff was arrested by Defendant Tabb after a traffic accident. Tabb allegedly yanked Plaintiff out of the car, threw him onto the highway, put his knees on his back and handcuffed him. Plaintiff alleges that he passed out from the force used during the arrest. At the preliminary hearing, Tabb allegedly lied about the direction in which Plaintiff was driving and about whether he had taken a sobriety test. (ECF No. 1 at 2.) Plaintiff notes that "[t]he person that was in the accident with me already got my insurance company too [sic] pay him without us going too [sic] court . . . ." (*Id.*)

Plaintiff also complains that the mattresses used at the Jail are thin, which causes his back and legs to hurt. The Jail is crowded, food portions are small and bologna is served as a snack. (*Id.*)

---

[1] The Court construes the allegations against the Jail as an attempt to assert a claim against Tipton County.

[2] The Court is unable fully to consider illegible submissions. *See, e.g., Schuster v. Oppelman*, 962 F. Supp. 394, 396 (S.D.N.Y. 1997); *Chin v. Davis*, No. CIV. A. 95-2798, 1996 WL 328329 (E.D. Pa. June 14, 1996); *see also Duncan v. AT&T Commc'ns, Inc.*, 668 F. Supp. 232, 234 (S.D.N.Y. 1987) ("the court's responsibilities do not include cryptography").

In a postscript, Plaintiff notes that the Affidavit of Complaint refers to the results of laboratory tests even though his attorney told him that the results of the lab tests had not been received. (ECF No. 1-1 at 1.) Plaintiff asserts that "[t]hey are prelonging [sic] my legal rights" and that the victim is "the nephew of former Trooper Marvin Worfolk, who is now working for Tipton County Sheriff Department after he got fired from Tennessee Highway Patrol Department." (*Id.*)

In the prayer for relief, Plaintiff says that he wants his criminal case to be "fair and legal." (*Id.* at 3.) He asks the Court to "get all the information and look it over for [him] an [sic] see that justice I [sic] done." (*Id.*) Plaintiff also asks the Court to do something about the condition of the Jail. He avers that he is sharing a four-man cell with eight inmates, that some inmates are sleeping on the floor, and that the cells are not sanitary. (*Id.*)

Attached to the complaint is a copy of an Affidavit of Complaint charging Plaintiff with aggravated vehicular homicide, which was signed by Defendant Tabb on May 23, 2014. (ECF No. 1-1 at 2.) That document states, in pertinent part, as follows:

> While investigating this case, I examined the crash scene and photographs. General vehicle inspection of the vehicles involved were conducted. An after crash situation map was created and reviewed. Data from the Chevrolet's Air Bag Control Module (ACM) was obtained and reviewed. Based on the information provided, the following can be concluded:
>
> 1) U.S. Highway 51 is a four (4) lane highway with two (2) lanes of travel for each direction. The north bound and south bound lanes are divided by a grassy median. This area of roadway is level and straight. The posted speed limit is 60 miles per hour. Just north of the crash are two (2) "Do Not Enter Signs" posted. (Information obtained from the electronic Tennessee Crash Report and evidence at the scene.)

2) James T. Hoover was the unrestrained operator of a 2001 Chevrolet Impala traveling north on U.S. Highway 51 in the south bound lane. (Information obtained from the electronic Tennessee Crash Report and evidence at the scene.)

3) Ray Allen was the unrestrained operator of a 2012 Nissan Altima that had just entered onto the south bound lanes of U.S. Highway 51 from a commercial drive way. (Information obtained from the electronic Tennessee Crash Report and evidence at the scene.)

4) Antonio D. Norfolk was the unrestrained passenger seated in the front right seat of the 2012 Nissan Altima. Norfolk was killed as a result of this crash. (Information obtained from the electronic Tennessee Crash Report and evidence at the scene.)

5) A sample of James Hoover's blood was collected by the Regional Medical Center the day of the crash and a search warrant was obtained on July 8, 2013, for the blood sample. The sample was then given to the Tennessee Bureau of Investigation Crime Lab for testing. The official alcohol report determined Hoover's blood sample to contain 0.26 of Ethyl Alcohol (Gram %). The official toxicology report determined Hoover's blood sample to contain 25 ng/ml of 11-nor-9-carboxy-delta-9-THC.[3] (Information obtained from the Tennessee Bureau of Investigation official alcohol and toxicology report.)

6) A sample of Ray Allen's blood was collected by the Regional Medical Center the day of the crash and a search warrant was obtained on July 8, 2013, for the blood sample. The sample was then given to the Tennessee Bureau of Investigation Crime Lab for testing. The official alcohol report determined Allen's blood sample to contain 0.0 of Ethyl Alcohol (Gram %). The official toxicology report determined Allen's blood to contain no drugs. (Information obtained from the Tennessee Bureau of Investigation official alcohol and toxicology report.)

7) Hoover collided head-on with Allen. After impact, Hoover's vehicle rotated counter clockwise and came to final rest in a grassy area just west of

---

[3] This substance "is the main secondary metabolite of tetrahydrocannabinol (THC) which is formed in the body after cannabis is consumed." En.wikipedia.org/wiki/11-nor-9-Corboxy-THC.

the roadway edge of the southbound emergency lane facing west. (Information obtained from the evidence at the scene.)[4]

8) After impact, Allen's vehicle rotated counter clockwise. Allen's vehicle came to a final rest in the south bound lane of U.S. Highway 51 facing north. (Information obtained from the evidence at the scene.)

9) At the time the two vehicles collided, Hoover was traveling at a minimum of 71 miles per hour and Allen was traveling at a minimum of 14 miles per hour. (Information obtained from the (ACM) air bag control module on the 2001 Chevrolet Impala and a mathematical analysis of the crash evidence.)

Conclusion: This crash was a result of Hoover operating his vehicle while under the influence of alcohol and traveling north in the south bound lanes of U.S. Highway 51.

(*Id.*) A handwritten note to the report states that "[a] review of Hoover's driving history shows he has three prior D.U.I. convictions in Tipton County." (*Id.*) Plaintiff has written on the document that "[e]verything in this Report is flase [sic]." (*Id.*)

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

---

[4] The Affidavit of Complaint places ¶ 8 immediately after ¶ 6, and includes ¶ 7 in the section labeled "Conclusion." (*See* ECF No. 1-1 at 2.) In the interest of clarity, the Court has moved ¶ 7 from the concluding paragraph and placed it between ¶ 6 and ¶ 8.

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827

6

> (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who

7

come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Hoover filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The only specific relief Plaintiff seeks is some type of federal intervention to ensure the fairness of his pending criminal proceeding. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three

specifically defined exceptions,' which are set forth in the statutory language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). No exception to the Act is applicable here. *Mitchum v. Foster*, 407 U.S. 225, 233-38 (1972). The Supreme Court held in *Younger v. Harris*, 401 U.S. 37, 40-41 (1971), that the Anti-Injunction Act precludes federal courts from enjoining pending state criminal prosecutions. The Court also does not have the authority to conduct "an ongoing federal audit of [the] state criminal proceedings" involving Plaintiff. *O'Shea v. Littleton,* 414 U.S. 488, 500 (1974). If Plaintiff is unfairly convicted, he can take a direct appeal. He can also avail himself of state post-conviction remedies and, if he is unsuccessful, can file a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Plaintiff's complaints about Jail conditions appear to be brought against Tipton County. For a convicted prisoner, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). In the case of a pretrial detainee such as Plaintiff, "the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being 'punished,'" *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000). Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fourteenth Amendment if held in state custody. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009); *Liscio v. Warren,* 901 F.2d 274, 275–76 (2d Cir.1990). Although Hoover was a pretrial detainee during the events at issue, the court

9

will analyze his claims regarding jail conditions under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of convicted prisoners. *Thompson v. Cnty. of Medina*, 29 f.3d 238, 242 (6th Cir. 1994) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).[5]

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347

---

[5] On June 22, 2015, the Supreme Court held, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under a Fourteenth Amendment standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472-73. It is unclear whether or to what extent the holding in *Kingsley* may affect the deliberate indifference standard for claims concerning an inmate's health or safety, which the Sixth Circuit applies to both pre-trial detainees and convicted prisoners. *See Morabito v. Holmes*, 628 F. App'x 353, 356-58 (6th Cir. 2015) (applying, even after the decision in *Kingsley*, the objective reasonableness standard to pretrial detainee's excessive force claims and the Eighth Amendment's deliberate indifference standard to denial of medical care claim). Absent further guidance, the Court will continue to apply the deliberate indifference analysis to claims concerning a pretrial detainee's comfort, health and safety.

(1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). The Constitution "'does not mandate comfortable prisons.'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 349). "[R]outine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The conditions alleged to exist at the Jail, although perhaps uncomfortable, do not rise to the level of an Eighth Amendment violation. "'[E]xtreme deprivations' must be alleged to support a prison overcrowding claim." *Agramonte v. Shartle,* 491 F. App'x 557, 560 (6th Cir. 2012). "[O]vercrowding is not, in itself, a constitutional violation, and [Plaintiff] has not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation." *Id.*; *see also Brown v. Plata,* 131 S. Ct. 1910, 1932 (2011) (overcrowding violates the Eighth Amendment when it "strains inadequate medical and mental health facilities; overburdens limited clinical and custodial staff; and creates violent, unsanitary, and chaotic conditions that contribute to the constitutional violations"); *Daugherty v. Timmerman-Cooper,* Civil Action No. 2:10-cv-01069, 2011 WL 3206844, at *3 (S.D. Ohio June 28, 2011) ("Since *Rhodes*, numerous courts, including both the Sixth Circuit and this Court, have emphasized that double or triple celling inmates, without more, is insufficient to state a constitutional claim.") (report and recommendation), *adopted,* 2011 WL 3207053 (S.D. Ohio July 27, 2011).

The Court cannot order Plaintiff's release. When a prisoner seeks to challenge the validity or duration of his confinement, his sole remedy is a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.").

To the extent that Hoover is suing Defendant Tabb for excessive force, his claims are time barred. There is no allegation in the complaint that Hoover was charged with any offense except that stated in the Affidavit of Complaint, which was aggravated vehicular homicide. (ECF No. 1-1 at 2.) An excessive force claim against Tabb would not call into question the validity of a conviction for aggravated vehicular homicide. *Cf. Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Therefore, the excessive force claim accrued on the date of the offense, July 6, 2013. Plaintiff did not file his complaint until February 11, 2015, well outside the one-year statute of limitations in Tennessee Code Annotated § 28-3-104(a)(3).

For the foregoing reasons, Hoover's complaint is subject to dismissal in its entirety for failure to state a claim on which relief may be granted.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the

complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, because the deficiencies in Hoover's complaint cannot be cured, leave to amend is not warranted.

## IV. Appeal Issues

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Hoover in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for

13

failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

## V. Conclusion

The Court DISMISSES Hoover's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED because the deficiencies in Hoover's complaint cannot be cured. It is also CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Hoover would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Hoover nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Hoover is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Hoover, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This

"strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**　　　　　　　　  
JAMES D. TODD  
UNITED STATES DISTRICT JUDGE